Good morning, Your Honors. My name is Vernon Peltz. I represent Mr. Tom Bentley and Mr. Steve Bentley. This case is a relatively simple case. It's nothing like the case I sat and heard. What is the effect of the forfeiture order, the state forfeiture order? I don't believe there's any effect of the state forfeiture order and certainly no effect of the state forfeiture order on Mr. Tom Bentley. If there's any effect at all, it would be for Steve and Bentley. Let me tell you why I'm asking that. The order doesn't say that, let's see, Steve is the son and Thomas is the father? That's correct, Your Honor. It doesn't say Steve's interest is forfeited. It says defendant shall forfeit the weapons. Now, taking the complaint as true, which we have to on 12b-6, the interest that Steve has in the weapons is the same as a pledgeor's interest in something that has been pawned. It's the title burdened by a lien in favor of his father. Mr. Tom Bentley. But the forfeiture doesn't break up the title that way, and I wonder what the effect is. Well, Your Honor, first of all, I don't think there's any effect for several reasons. One, the weapons are not in the control of and either were they seized by the state. I don't think you understood my question. Okay. That wouldn't matter to my question. Okay. Well, I don't believe it has any effect. If somebody steals a fur coat and pawns it, and as it turns out, they were a thief, the pawn shop can't take title from a thief. So once it's established that title is in the original owner of the fur coat, the pawn shop loses it and does not get paid. The police take the fur coat and give it back to the original owner. And I'm wondering why the forfeiture doesn't operate similarly. Well, it doesn't operate similarly because it was the forfeiture order in the state court. There was only jurisdiction over Mr. Steve Bentley, no jurisdiction over Tom Bentley. That court didn't even have the power to decide whether or not Tom Bentley can own and possess those weapons. That court ruling only applied to the person that was before it, which was Steve Bentley, and it was an order that came as a result of his criminal conviction. And furthermore, Your Honor, that order was prior to the complaint filed in this matter. Now, Mr. Tom Bentley did not indicate that he was anything other than an owner, and that's what the complaint alleges, is that he is an owner of those weapons that were stored in the storage shed in Gilbert, Arizona, and seized by the ATF without a warrant, without any cause, perfectly legal. I thought Thomas was just the pledgee, not the owner. No. Thomas is the – he has an ownership interest in the weapons, and I believe we did plead that. Well, let's look at your complaint. I thought it made him a pledgee. It says that he has a letter attached, which the complaint incorporates. What it says is, he gave his father possession of the guns as collateral to secure the repayment of his loans. That's what you do with a pawn shop. That's a pledge. Well, no, collateral is what more you do when you buy a car, and the car is collateral. Collateral is, I'm going to give you these guns to guarantee repayment. That's really not a – Collateral is a non-possessory security interest. The pledge is a possessory security interest. Well, it – They're both security interests. They're both security interests, but they're a little bit different. One of them, I'm going to keep these weapons in my possession until you pay. That's why it's called a possessory security interest. And that happened long before either the trial or – Are you using the word ownership as though it meant or embraced possessory security interest? Is that what you mean by saying Thomas is the owner? Correct, Your Honor. And those events happened – It's not correct, but now I understand what you mean. Well, that's what I mean, Your Honor. And those events happened long before this complaint was filed or the judgment in the State court. Mr. Bentley has an ownership – Incidentally, do you have any cases on pawn shops? People pawn guns all the time. You go into a pawn shop, you see a lot of guns. At least, well, where I live, you do. Well, I didn't – I didn't find any. I was relying more on the cases that apply to whether or not we've adequately pled a cause of action in the complaint. I didn't look to find cases about pawn shops because I believe that that complaint is – And another thing is, even if the complaint – It appears that the government has conceded and waived the argument that this court, this Ninth Circuit Court, holds that it is an abuse of discretion to deny a motion – to grant a motion to dismiss for failing to state a claim without leaving them willing to amend it. And the government has apparently conceded that issue. And the reasoning is that because it's an initial pleading and there hasn't been a response of pleading, that the plaintiff should be entitled to amend. What would the amendment be, incidentally? Well, that brings us exactly to the problem. I wouldn't know. Because I have never heard from the government what element is not pled. What is missing from that complaint? I have only heard from the government that what we pled is not true. And that there was notice. And that he's not an owner. I have never, in all the pleadings that I've seen, and neither did I hear from the judge, what that deficiency is. The judge just granted the motion to dismiss. He never said, you didn't plead this element, you didn't plead this, you didn't plead – I have never. Until the brief of the government, when they indicated that what I should have pled was that there was an administrative forfeiture and we didn't have notice and it should have been set aside. And until that, I have never seen or heard any judge or any pleading tell me what was deficient. They only argue with the statements. Do you have a question, Your Honor? What did you plead as to Tom Bentley, Thomas Bentley? I pled that he had an ownership interest in those weapons and that he retained a security interest in those weapons and had for quite some time. Is it not true that Steve said that he, Steve Bentley, was the owner of that? And that was the reason the forfeiture in the estate proceeded, right? Well, those were his weapons. Well, that's the way Steve fell, believe me. But because you give your car as collateral to somebody to secure it, no, it doesn't mean you lose your ownership. My question is, Steve was the owner. And the father was claiming some possessory interest in this because he loaned Steve some money. Isn't that what it is? Well, Steve was one of the owners, an ownership interest in the forfeiture law. Counsel, I wish criminal lawyers would read Article 9 of the Uniform Commercial Code when they're dealing with civil things. Both prosecutors and defense lawyers just don't read that stuff. That's why we're confused here. Well, but the ownership interest for the forfeiture law goes to anybody that has an interest. Whenever there's a forfeiture, don't they notify the banks as an interested owner that that property is subject to seizure? Of course they do, because they have some interest that requires notice. And that's what this case is about. They have every time there's a seizure. What it's about is you don't own property. You don't own interests in property. But even people who have a security interest deserve notice under the forfeiture statutes, and that's what they get. Your Honor, I see I'm out of time. I'd like to read. Let's go back to Judge Stafford's questions. I mean, isn't the situation, these were the son's weapons. He was a convicted felon. He couldn't own them. And the father loaned him some money. And now the father is claiming that he has some sort of unrecorded possessory interest because of the money they loaned his son. And that's what was before the judge who made this order. That's what the judge had before the court that entered the order dismissing, right? Well, he had the complaint. And the motions. I don't know that he had any of those. Wasn't there an attachment? Wasn't the State court proceeding, wasn't that attached to the complaint? Filed in the proceeding? That was provided after the complaint was filed, after the motion to dismiss was filed, when that order came down. Okay. And is there anything to counter that before the judge? The complaint is that Mr. Bentley has an ownership interest. An ownership interest that deserves notice and that he should be provided notice. And he was not. And he, therefore, when he filed his claim, it was deemed late and he didn't get notice. Wall Street, you're talking about the one in the Wall Street Journal? Right. And you're talking about actual notice. Well, that's my position. He deserved actual notice, Your Honor. When the forfeiture happens of a car or weapon or anything and the government knows that there's a bank out there with some kind, let's just say some type of ownership interest, they deserve notice. And that's what they should have gotten. Isn't that what the public notice, a newspaper of circulation like the Wall Street Journal? Isn't that the catch, that situation of the scintilla of evidence that there may be some illusory possessory interest owned by some unknown person somewhere in some obscure corner of this republic? Whether or not there is an adequate ownership interest, that's a matter for trial. And notice should never be proper when you know the person's address and you publish. Publication should only be when you don't know the person and can't find the person and have no other means. When the government knew that he said he owned it and that he had an interest, they should have, under Mullane v. Anover, and all the statutes on notice have provided him notice. It's the cornerstone of seizure law. Thomas Bentley claims because Steve Bentley is his son. He claims through Steve. That's correct. But that happened before his ownership interests. And in the court file, there is this forfeiture order from the state court, right? That's correct, Your Honor. There is that order. And you have no recorded security interest anywhere? Your client. I'm talking about Thomas Bentley. He had a possessory interest. He doesn't have a recorded security interest. That wasn't my question. He has no recorded security interest. That's correct. Anywhere. That's correct. All right. Thank you. Thank you, Counsel. Good morning, Your Honors. I'm Reid Pixler, representing ATF in this case. I think if I can't hear you, sir. Oh, I'm sorry. My name is Reid Pixler. I'm an assistant United States attorney representing the Alcohol and Tobacco Firearms and their agents. Counsel, when a bank does have a lien on a car, does ATF just publish notice in a newspaper of general circulation or does it send the bank a letter? My understanding is ATF, in researching the title, for example, of the car, would find that lien and would provide direct notice to the lien holder. Now, with a possessory lien, such as occurs in a pledge, no recording is necessary. A recording is necessary to perfect a non-possessory lien, and that's why it shows up in a title search. That's correct. With a possessory lien, such as a pawn shop holds, there is no security agreement and recording of a title search. There may be, but it isn't ordinarily required to perfect the lien under Article 9. What does ATF do with pawn shops when it knows that the object has been pawned? From my understanding in handling similar kinds of cases, if they're able to identify from the pawn shop owner's records that there is an individual who is the real owner or the person who pawned the property, they will contact the record owner of that interest. In addition, they do sort of a title search. They'll check the registry to determine the serial numbers of the firearms to identify whether any of those firearms are listed as stolen someplace. So they'll then attempt to reach and contact the prior owner who has reported them as stolen. Now, what happens to the pawn shop's interest? That's an excellent question. The pawn shop would have an opportunity, if they're not stolen, to assert an interest in the forfeiture action. I understand that the forfeiture here is not based on the weapons having been stolen. That's correct. The state forfeited them a considerable time subsequent to the pledge. Will the state case happen at the end of the criminal trial? They were pledged. We have to take the complaint as true. I don't know if it's true. I don't care if it's true. It's not before us whether it's true. We have to assume that it's true for legal purposes in this case. And assuming that it's true, the weapons were pledged as security long before they were forfeited. So the son still owned the full interest in them when he pledged them. As I understand the pleadings, that's correct. Is that right? What I understood from I think it's Exhibit C to the complaint, a loan was made prior to the first conviction. So that means that the father has a possessory security interest to the extent of security for $7,000 in the weapons. As I understand the pleadings, Your Honor, the pledge of the firearms occurred only after the first conviction. So the pledge didn't occur until the holding of Felici. Before the forfeiture. Before either the administrative forfeiture or before the state court forfeiture. Before both. That's correct. Now, on the effect of the conviction on ownership, we have a Ninth Circuit decision, Castor Line, which says it was on the question whether a felon can be convicted of possessing a firearm based solely on ownership. And we wrote in that case, the answer is no. The statute does not criminalize ownership of guns by felons. We held that it criminalizes possession of guns by felons, but not ownership. And I think we specifically spoke of pawn shops in that case as being created in a circumstance where a weapon could be owned by somebody convicted of a firearm, but not possessed by the person convicted of a felony so that he couldn't possess a firearm. And what I really don't understand about your case is, why isn't the father just like the hypothetical pawn shop in Castor Line? Well, in Castor Line, the facts are different. They weren't pawned. He was convicted of possessing guns when he was in jail in one city and the guns were somewhere else in another city. So there was no way he could have dominion and control over them. But he had title to them. Okay. As I understand the investigation here, the guns were in physical proximity of Steve in Arizona. Thomas lived in Farmersville, Texas. I thought the guns were in a storage locker. They were in a storage locker near the residence of Steve Bentley in Arizona. The complaint, which is all we have to go on under 12b-6, didn't say who had to keep the storage locker. Yeah, and I don't know, Your Honor. Well, if you don't know and we don't know, and what we know is that they were in a storage locker controlled by the father, which is what the complaint says, because they were pledged to the father to secure a $7,000 loan, then I think we have to assume that Steve did not have dominion and control over them. Other than he was convicted in the state court for having dominion and control over those same firearms. Subsequently. Subsequently. Well, subsequently, I don't know exactly the end of the trial date, but the sentencing minutes were within weeks of the filing of the motions that are before the court here. I'm not sure I understood the within weeks part of your answer. I'm sorry. The complaint had been filed and not served for a substantially long period of time. There was an application for a default judgment on the basis that the United States didn't respond. That was when our office learned of it, because the magistrate judge sent us a copy of the denial of the motion for default judgment. At that point, I think it was March 19th, I filed the motion to strike the complaint, and then the pleading was occurring approximately at that time. Mr. Bentley had been convicted by that point in time, but the sentencing minutes hadn't been published yet. You're bringing in a lot of facts that aren't in the complaint, and I wonder why this wouldn't have to go to summary judgment. What we asked the court to do was take judicial notice of the orders of the state court. We have no problem with taking judicial notice of the judgment of the state court that you submitted, but you've described some other things, too, about the timing and what happened in the office and when things were filed that I don't think was in there. I believe that I'd set that out in my motion, Your Honor. If I didn't, I'm staying corrected. There's no document to take notice of there, is that right? Nothing other than the- Let me get to my point here. What it looks like to me, and I want you to educate me and show me why I'm mistaken, it looks to me as though Steve had an interest in the guns, an ownership interest. Thomas had an interest in the guns, a security interest, to secure a $7,000 loan. The guns cannot be returned to Steve because Steve is a felon and he cannot possess guns. I want you to give them to Steve because that would put them in his dominion and control. That's correct. Since the guns have been ordered forfeited, I would think that the right remedy would be the guns get sold and Thomas gets $7,000 off the top and whatever's left goes to Steve because he's not unable to possess and control money, just guns, except that depending on what state law may be in the state where they were forfeited, it may be that the money goes to the state instead of to Steve because of the forfeiture of Steve's interest in the guns. I don't know. There's no Arizona law on that. In this situation, I believe both the state of Arizona and the Department of Justice policies are that the firearms are destroyed for a number of reasons. This isn't in the pleadings, Your Honor, but they don't want them to be resold for fear they'll go in the hands of a criminal element and they also fear a liability in the event if there's any defective components in the firearms and they cause damage after they're sold and used in another purpose. So the firearms universally in the state of Arizona are destroyed after forfeiture. It could be worth a lot of money. It could be worth a lot of money. I've cited all the cases. There's no brand-new Smith & Wesson Model 29 in a box. There are a few exceptions where items are still in a box. They can be viewed for whether it's appropriate for official use or for sale, and museum-quality pieces can be provided for display. So what happens to somebody who has a legitimate security interest? I would think that sometimes you'd be forfeiting guns from, say, a gun store and the manufacturers who sold the guns to the gun store on credit would have legitimate security interests. Generally, I've not had that exact situation with an ATF case, but generally those are resolved by a settlement agreement that allows and recognizes the security interest of a legitimate lien holder, particularly if the ---- This is 12b-6, so we treat the complaint as though it's true. That's correct. Based on the complaint, that's what Thomas is. It's just like if Colt had sold some guns to Joe's Gun Store in Phoenix. On the authority that I cited in the brief, Howell and Felici, once Mr. Steve Bentley was convicted of the first felony, he had no ability to convey any interest in those firearms. He was, in fact, possession and constructive owner of those guns and conveying any interest in them. Have I got the dates wrong? I thought he conveyed the possessory security interest before he was convicted of a felony. Not according to the pleadings, Your Honor. They're consistent throughout that the loan was made but not secured until after the date of the first conviction. And then there's the statement that it was transferred to the possession of Thomas Bentley in a storage locker in his name near Steve Bentley. So he transferred possession to Thomas after he had been convicted of a felony. That's the allegation, although I think the facts would support that it was simply changing the name on the storage locker and the property was still in the possession of Steve Bentley. That led to his second conviction. But the important point, Your Honor, is that from the beginning, the only interest Thomas Bentley has is in secured interest or possessory interest or whatever you want to call it, only arose after the first conviction. And we believe and have argued that that is defective. He has no interest. And the end result is all of this is meaningless. It cannot be returned to either Steve or Tom Bentley. Thank you, counsel. Is it possession and or interest after the first felony conviction? Yes. Okay. Thank you. Thank you, counsel. Your Honors, the problem here is whether or not there was a first conviction, whether or not it was transferred after that first conviction or before, whether or not there was any interest left, those are matters of fact that should be resolved at a motion for summary judgment and not on a 12B6 motion to dismiss for failing to state a claim. If the government can prove everything they told you today, they should be allowed to prevail on a motion for summary judgment. I don't believe they can prove everything they've told you today, and that's why we're here. When was the first conviction? I don't even remember when the first conviction was. The only reason the government indicates that that were transferred after the first conviction is because it was from the attorney's fees from the first conviction that my client, Tom Bentley, gained his ownership interest for providing the attorney's fees. And, you know, we talked about this. Give me a retainer before I did all the work and long before judgment, whatever it was. I wasn't on that case, Your Honor. I wasn't retained then. I don't know when that was, but it's not relevant because those are facts that would be something that we would get a trial for. Mr. Bentley deserves a trial to determine whether or not he does have an ownership interest and whether or not it is for $7,000. And, quite frankly, if you look at Article 9, his ownership interest, he's oversecured, but that doesn't change his interest. And he might be entitled to even more than $7,000. I think if the facts came out, it would show that he's lent more money as time went on and he doesn't have just the $7,000. But those are issues that we should resolve for trial, and that's why you should reverse this Court's decision and remand it back for a decision and allow the complaint to proceed. What response was there made to the 12-page motion? I filed a response that basically indicates what I've argued today, that you need to consider the elements of the complaint as true, and Mr. Pichler's argument that this wasn't what happened, the notice was adequate, we've already seized it, our matter's outside of the complaint, and it was improper to consider those motions. But wasn't the record from the State court in Arizona, wasn't that part of the record at that time? That wasn't part of the record until the judge agreed to make it part of the record and then immediately ordered the issue dismissing this complaint. And I didn't even have a chance to respond to that before it was rendered. All right. Now, what, jumping back, if you had, what kind of response would there be that's incorrect, Rick? The same response that I filed, but it didn't get considered. I did file a response, but the judge made his decision, which is the fact that Steve's interest was forfeited doesn't affect Tom, and that Tom still has an ownership interest, he still deserved notice, he didn't get notice, and he should still be allowed to move forward with his complaint. I did file that response, Your Honor. That was filed. Unfortunately, the judge that granted the motion dismissed didn't even wait until that response got there before he granted that motion. So I don't know if he considered it. Was it late or was it a claim or not? No, Your Honor. It was not late, and there's no indication from the judge, from any parties here, that that was a late response. It's just he decided the very moment that he got the supplemental authority, he dismissed the complaint, and my time to respond hadn't even expired yet. But I did file a response nonetheless. I think they probably crossed. My time is up. Thank you. Bentley v. AT&F is submitted.
judges: Stafford, Kleinfeld, Thomas